UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHAUNTE KNAPP

             Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

No. 1:14-cv-3189-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 16.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Catherine Escobar represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Shaunte Knapp (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on September 24, 2010. (Tr. 234, 236, 296.) Plaintiff alleged an onset date of March 11, 2010. (Tr. 234, 236.) Benefits were denied initially and on reconsideration. (Tr. 139, 143, 147.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Wayne N. Araki on May 3, 2013. (Tr. 37-86.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 39-75.) Vocational expert Kimberly Mullinax also testified. (Tr. 75-85.) The ALJ denied benefits (Tr. 12-28) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born June 17, 1969 and was 43 years old at the time of the hearing. (Tr. 234.) She left school in the 11th grade but has a GED. (Tr. 61.) She has work experience troubleshooting

calls regarding cell phones contracts; pulling cables through ceilings for computer server rooms; selling handheld computers; cutting metal for fabrication (machinist); driving a forklift; and taking store inventory. (Tr. 54-57.) In March 2010 she was involved in an auto accident. (Tr. 50.) She sustained broken limbs and ribs and the car caught on fire. (Tr. 58.) At the time of the accident she was unemployed. (Tr. 58.) She suffers from PTSD. (Tr. 58.) She takes medication for depression, bipolar, ADHD, migraines, pain, and to regulate her bathroom behaviors. (Tr. 43.) Her depression has gotten worse despite being on medication. (Tr. 52.) She has a hard time getting out of her apartment. (Tr. 59.) She testified she cannot handle new conversations or instructions. (Tr. 61.) She says she jumps from subject to subject when talking on the phone. (Tr. 61.) She feels that she cannot handle things. (Tr. 61.) She has a personality disorder. (Tr. 64.) She can only work with her right hand and cannot really use her left hand. (Tr. 61.) She can no longer use a computer. (Tr. 62.) She has pain in her legs. (Tr. 63.) She is angry because she is not capable of doing simple things. (Tr. 62.) She has problems reading and concentrating. (Tr. 73.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 11, 2010, the alleged onset date. (Tr. 14.) At step two, the ALJ found plaintiff has the following severe impairments: affective disorder, anxiety/posttraumatic stress disorder, attention deficit hyperactivity disorder, status post open left ankle fracture dislocation, status post closed left ulnar shaft fracture, status post closed right lateral tibial plateau fracture, status post right lateral meniscus tear, and status post left peroneus tertius rupture. (Tr. 14.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 16.) The ALJ then determined:

[C]laimant has the physical residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently. She can occasionally stoop, crouch, kneel, balance, and climb ramps and stairs. The claimant should not crawl or climb ladders. She can sit, stand or walk for two-hour intervals each and can perform each of these functions for a total of eight hours per day. The claimant can occasionally interact with the general public, coworkers and supervisors. The claimant is limited to frequent reaching, handling and fingering with the left non-dominant upper extremity. She can understand, remember and carry out instructions and tasks generally required by occupations with an SVP of 1 or 2.

(Tr. 17-18.) At step four, the ALJ found plaintiff is unable to perform past relevant work. (Tr. 25.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 26.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from March 22, 2010, through the date of the decision. (Tr. 27.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) improperly rejecting medical evidence; and (2) finding plaintiff less than fully credible. (ECF No. 13 at 13-31.) Defendant argues: (1) the ALJ reasonably concluded plaintiff's testimony was not credible; and (2) the ALJ reasonably considered and weighed the medical evidence. (ECF No. 16 at 6-32.)

## DISCUSSION

### 1.    Credibility

Plaintiff argues the ALJ erred by finding plaintiff less than fully credible. (ECF No. 13 at 24-30.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and

cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering.[1] *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In this case, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the claimant's statements regarding the

---

[1] Defendant asserts "clear and convincing reasons" is not the proper standard for the credibility finding. (ECF No. 16 at 7.) A long line of cases is established law which sets forth "clear and convincing reasons" as the requisite basis for a negative credibility finding. *E.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivani*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). Plaintiff argues that the Commissioner's position indicates the ALJ applied the wrong standard in making the credibility determination. (ECF No. 19 at 2-4.) This argument is unavailing, as defendant's argument that a different standard should apply does not indicate the ALJ applied the wrong standard. The reasons cited by the ALJ are specific, clear and convincing and are supported by substantial evidence.

intensity, persistence and limiting effects of those symptoms are not entirely credible. (Tr. 19.) The ALJ cited a number of reasons supporting the negative credibility finding. (Tr. 19-21.)

The first reason mentioned by the ALJ in rejecting plaintiff's testimony is that plaintiff did not stop working due to her mental impairments which have reportedly existed since she was young. (Tr. 19.) An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001). Plaintiff testified that she had concentration problems since she was young but she was able to manage her symptoms and be employed until her auto accident in March 2010. (Tr. 69, 742.) Plaintiff's last job ended due to transportation issues. (Tr. 19, 300, 744.) She testified she was not employed but was actively looking for work when she had the motor vehicle accident. (Tr. 18, 57.) However, plaintiff asserts her mental and physical condition deteriorated after her accident. (ECF No. 13 at 26.) While it is possible that a person could become disabled while out of work for reasons unrelated to disability, it was not improper for the ALJ to consider the fact that plaintiff left her last job for reasons other than disability as part of the credibility determination.

The second reason mentioned by the ALJ in support of the negative credibility finding involves inconsistency in her statements about the duration of her stays in the hospital and nursing home after her accident. (Tr. 19.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff testified she was in the hospital for three months followed by an 11-month stay at a nursing home. (Tr. 19, 62.) However, she was actually discharged from the hospital after less than a month and a half and was in a skilled nursing facility for around eight months. (Tr. 19, 359, 659.) Plaintiff explains the inconsistencies as "misstatements" that do not rise to the level of a clear and convincing reason for the negative credibility finding, while defendant argues the ALJ "reasonably concluded that Plaintiff had exaggerated the degree and amount of care she required following her car accident, undermining her credibility." (ECF No. 13 at 26.) The court agrees with plaintiff in this instance. Without more, this relatively small discrepancy over dates and periods of time spent in particular institution does not reasonably constitute substantial evidence of a clear and convincing reason for rejecting plaintiff's testimony. However, the error is harmless because there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate

nondisability determination. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).[2]

    As another indicator of a lack of credibility, the ALJ pointed out plaintiff testified she did not trust anybody or make friends. (Tr. 19, 73.) However, the ALJ found record reflects plaintiff had friendships and trusting relationships with others. (Tr. 19.) A strong indicator of credibility is the consistency of the individual's own statements with other information in the case record. S.S.R. 96-7p. Plaintiff developed friendships with others at the skilled nursing facility. (Tr. 19, 651.) In December 2011, plaintiff reported she was living with a friend. (Tr. 19, 745.) She also reported she got along with neighbors and had a number of friends. (Tr. 19, 745.) In November 2012, plaintiff reported having been in touch with her mother, sisters and an old friend. (Tr. 19, 969.) In December 2012, she was pleased to have been asked to take care of a friend's children. (Tr. 19, 961.) On a Function Report form completed in December 2010, plaintiff indicated she gets along well with authority figures for the most part and denied problems getting along with family, friends, neighbors or others. (Tr. 19, 328.)

    Plaintiff argues the evidence reflects plaintiff's difficulty in getting along with others by citing records of encounters with doctors, staff and mental health workers. (ECF Nol. 13 at 27.) However, the ALJ specifically addressed plaintiff's behavior with medical providers and cited

---

[2] Plaintiff argues for a narrow reading of *Carmickle*, asserting it stands for the proposition that "when the ALJ commits even a single credibility error the general rule is to remand, and that to consider a credibility error harmless is appropriate only when the ALJ makes minor errors, but numerous, well-supported reasons remain." (ECF No. 19 at 5.) Citing *Batson*, 359 F.3d at 1197, the *Carmickle* court actually held that as long as there is substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, the error is harmless and does not warrant reversal. 533 F.3d at 1162. Citing *Carmickle* (among other cases), the court in *Molina v. Astrue* held that the general rule is that an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination. 674 F.3d 1104, 1115 (9th Cir. 2014.) The narrower construction urged by plaintiff is not supported by any binding authority. Furthermore, the court concludes that in this case there are multiple legally sufficient reasons for the credibility finding.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

1  evidence suggesting plaintiff's behavior during those encounters was motivated by a desire to
2  generate evidence for her disability claim, *infra*. Plaintiff also cites evidence she is estranged from
3  her family and had issues getting along with staff and roommates at the skilled nursing facility.
4  (ECF No. 13 at 27, Tr. 433, 457, 650-52, 659.) Notwithstanding, the ALJ cited substantial
5  evidence, including plaintiff's own statements, which supports the conclusion that her overall
6  social difficulties are not as severe as alleged. Where the evidence conflicts, it is the ALJ's duty to
7  resolve the ambiguity. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). In
8  this case, there is an adequate basis for the ALJ's interpretation of the evidence and this is a clear
   and convincing reason supporting the negative credibility finding.

9       Another reason cited by the ALJ in support of the negative credibility finding is the
10  conclusion that plaintiff's argumentative and demanding behavior with medical providers was
11  motivated at least in part by her desire to generate evidence for her disability claim. (Tr. 19.)
12  Evidence of motivation to obtain social security benefits may be considered in the credibility
13  determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). For example, in
14  September 2012 she was repeatedly asked by a clinician to stop yelling. (Tr. 782.) The provider
15  stated, "She was insistent that I write down my perception of her presentation and it was difficult[]
16  to tell if this was for her or for her SSI claim which she has consistently been obsessed and agitated
17  about." (Tr. 782.) In October 2012, plaintiff was again "obsessed" with having her symptoms
18  recorded for the purpose of her SSI claim. (Tr. 975.) The ALJ inferred that plaintiff would not
19  have been asked to care for a friend's children if her behavior in her personal life was similar to
20  her behavior when dealing with clinicians. (Tr. 19-20.) This is a reasonable analysis of the evidence
   and the ALJ's interpretation is supported by the record. As a result, this is a clear and convincing
   reason supporting the credibility determination.

21      Plaintiff argues her inappropriate behavior predated the application date of September 24,
22  2010, indicating her behavior was not primarily motivated by the desire to generate evidence of
23  disability. (ECF No. 13 at 27-28.) Plaintiff cites a note dated March 22, 2010, which mentions
24  symptoms of mania, disorganized thought process and pressured speech. (Tr. 412.) Plaintiff also
25  cites a note from April 2010 which mentions plaintiff "remains intermittently pressured,
26  disorganized, and anxious about discharge," although concentration and thought organization were
27  noted to be improved compared to initial presentation. (Tr. 373.) It is noted that the ALJ mentioned
   plaintiff's behavior being motivated only "in part" by the desire to generate evidence and the ALJ

tied that motivation to instances where plaintiff's words and actions were punctuated by comments to the providers to make sure to record her inappropriate behavior. While plaintiff offers another interpretation of the evidence (ECF No. 13 at 28), where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The evidence cited by the ALJ reasonably suggests awareness of the impact of her behavior on her disability claim and was appropriately considered by the ALJ in making the credibility finding.

The ALJ also found plaintiff's cognitive function is better than she asserts as part of the credibility assessment. (Tr. 20.) Inconsistencies between a claimant's testimony and her conduct may reasonably be considered by the ALJ in making a credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In July 2011, plaintiff demonstrated intact cognitive functions including attention and concentration and short and long term memory. (Tr. 703.) In August 2011, plaintiff demonstrated "very good" concentration and attention span. (Tr. 20, 691.) The provider noted that for a "scattered person," plaintiff can "bring home the idea of what she wants." (Tr. 691.) During a mental status exam in November 2011, plaintiff recalled three of three objects immediately and two of three objects after a five-minute delay. (Tr. 20, 685.) She did serial 3's and spelled "world" backward correctly. (Tr. 685.) That same month, she reported her typical day includes reading. (Tr. 734.)

In December 2011, Dr. Toews performed a psychological evaluation during which plaintiff recalled three of three objects immediately and after a seven to eight minute delay. (Tr. 745.) She recalled only three of 15 figures, but Dr. Toews indicated this was due to poor cooperation. (Tr. 20, 745.) He opined that plaintiff did not appear to have cognitive or memory deficits and functioned in the average range of intelligence. (Tr. 746.) She was vague about symptoms and her motivation and effort seemed poor. (Tr. 745.) Dr. Toews noted she "wanted to dictate the content of the report, and to make sure it indicated she is severely disabled." (TR. 746.) He observed she has little interest in considering the possibility of vocational retraining or assistance in securing employment. (Tr. 746.)

In March and April 2012, plaintiff's memory and intellect were grossly intact. (Tr. 866, 872.) Similarly, another provider found plaintiff's memory and cognition to be grossly intact four times in March and April 2013. (Tr. 934, 939, 948, 987.) The ALJ pointed out that although plaintiff suggested she had a traumatic brain injury, a CT scan of her head on the date of the motor

vehicle accident showed no acute intracranial abnormality. (Tr. 513.) Further, the ALJ observed that although she reported disorganization to her therapist on February 6, 2013, an inspection of her apartment the day before had shown an orderly home. (Tr. 21, 954.) The therapist noted plaintiff's subjective experience was not congruent with the therapist's assessment. (Tr. 954.)

Plaintiff argues the evidence does not support the finding that her cognitive functioning is better than alleged and cites two instances where her therapist noted problems keeping an orderly home and struggles with subject changes during conversation, negotiating the transit system, completing homework, organizing her thoughts, and being late for appointments. (Tr. 954, 979.) These instances, without more, do not counter the cognitive findings of various providers throughout the record. Furthermore, plaintiff cites therapist Dove's report that plaintiff was not able to previously achieve an orderly home, but the therapist also noted, "She continues to report a subjective experience of disorganization" even when an apartment inspection report the day before indicated an orderly home. (Tr. 954.) The ALJ also pointed out that an October 2012 housing inspection revealed her apartment was clean and orderly, as well. (Tr. 21, 775.) As a result, the ALJ did not err with regard to the cognitive evidence and this is a clear and convincing reason supported by substantial evidence which justifies the negative credibility finding.

Another reason cited by the ALJ for the negative credibility finding is that plaintiff exhibited drug-seeking behavior. (Tr. 20.) Evidence of drug-seeking behavior may undermine a claimant's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.2001); *see also Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007). The ALJ pointed out plaintiff reported a history of drug use including experimenting with amphetamines. (Tr. 894.) The ALJ also stated plaintiff's ADHD complaints "must be viewed in this context." (Tr. 20.) Plaintiff's sole argument is that the ALJ did not specify which of plaintiff's complaints are related to ADHD or how drug-seeking behavior makes plaintiff less credible. (ECF No. 13 at 29.) General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). However, the ALJ adequately described plaintiff's mental health complaints including symptoms of ADHD and the evidence supporting a finding drug-seeking behavior. (Tr. 18-21.)

The ALJ pointed out that in July 2011, a provider noted, "[M]y sense is that [Shaunte] may be drug-seeking, going to great extent to convince me that she has ADHD and needs medication to keep her stable (meaning stimulants). Session demeanor is controlling, always guiding the

conversation back to her need for meds." (Tr. 703.) It was noted that speech was rapid and articulation was slurred and pressured, and that affect was distressed and angry. (Tr. 703.) However, the examiner also wrote, "[T]here is just a disingenuous flavor to this interview – as though her presentation is an attempt to convince me regarding a specific [diagnosis]." (Tr. 703.)

In September 2011, it was noted that plaintiff "kept trying to manipulate for a different contract" because she wanted Ritalin rather than wait out the trial of lithium. (Tr. 692.) On October 18, 2011, plaintiff wanted an increase in Prozac even though she had only been on it for one week. (Tr. 696.) She also complained her dosage of Adderall was not high enough to help her focus. (Tr. 696.) One week later, plaintiff wanted to take Adderall three times per day instead of two because she felt it was wearing off too fast. (Tr. 698-99.) She was also worried about her disability claim and "wants to make sure everything is recorded in the chart the way she wants it so that she can get on disability[y]." (Tr. 699.) In March 2012, plaintiff presented with "lots of complaints" regarding discontinuance of her stimulant. (Tr. 881.) In April 2012, plaintiff asked for Straterra although it was not part of the treatment plan for anxiety. (Tr. 846.) In May 2012, plaintiff was dissatisfied with Dr. Larimer and wanted to find another doctor to manage medications. (Tr. 840.) In March 2013, plaintiff apparently complained Concerta was wearing off too quickly and a second dose was added to help maintain decreased ADHD symptoms all day. (Tr. 941.) This evidence was reasonably determined by the ALJ to suggest drug-seeking behavior. Drug-seeking behavior undermines credibility because it suggest motivation to exaggerate symptoms in order to obtain drugs. *See Edlund*, 253 F.3d at 1157; *Lewis* 498 F.3d at 910. This is a clear and convincing reason supported by substantial evidence which justifies the credibility finding.

Lastly, the ALJ found plaintiff's credibility was undermined by evidence that her physical capacity is greater than alleged. (Tr. 21.) Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995). The ALJ pointed out that despite plaintiff's contention that she must essentially work one-handed, she has no impairment that limits her ability to use her left hand. (Tr. 18, 21, 61.) In November 2010, plaintiff demonstrated normal left upper extremity strength. (Tr. 350.) One year later, on November 18 2011, examination showed strength of 4/5 in most of the left upper extremity compared to 5/5 on the right. (Tr. 737.) Plaintiff could open a jar and pick up coins from a flat surface. (Tr. 737.)

The ALJ concluded that plaintiff did not appear to give her best effort at the November 18, 2011 evaluation. (Tr. 21, 737.) The ALJ noted that on November 18, plaintiff demonstrated knee flexion of only 95 degrees on the right, but at an examination two days earlier plaintiff demonstrated knee flexion of 135 degrees. (Tr. 21, 711, 736.) Plaintiff brought a cane to the November 18 evaluation, but no assistive device was noted at the November 16 evaluation. (Tr. 710, 737.) The ALJ observed that at the November 16 evaluation, plaintiff's gait was described as "unstable," and on November 18 plaintiff's gait was described as "quite slow" (Tr. 710, 737), but on December 1, 2011, her gait and station appeared normal at a psychological evaluation. (Tr. 745.) The ALJ pointed out other inconsistencies between the evidence and plaintiff's allegations, noting reports dated October 15, 2010, November 22, 2010, December 6, 2010, December 20, 2010, December 27, 2010, and January 10, 2011, all indicate her gait was normal. (Tr. 523, 525, 527, 529, 531, 533.) A report dated April 5, 2012, shows plaintiff stood for the majority of a 60-minute mental health medication management appointment. (Tr. 866.) On March 13, 2013, plaintiff's gait was normal. (Tr. 948.) However, in April 2013, it was noted that plaintiff walked with a cane. (Tr. 934.) The ALJ observed this was one month before the disability hearing and concluded plaintiff's use of a cane was an attempt to generate evidence for her disability claim. (Tr. 21.) This was a reasonable interpretation of the evidence.

Plaintiff argues the ALJ did not address Dr. Pellicer's notation that her assessment of physical limitations stemmed from chronic pain syndrome and suggests this accounts for plaintiff's intermittent use of a cane. (ECF No. 13 at 30, Tr. 737-38.) However, the ALJ addressed the notation of chronic pain syndrome and pointed to evidence that plaintiff was exaggerating her symptoms at Dr. Pellicer's examination. (Tr. 22.) The ALJ reasonably considered variations in flexibility and other measurements and observations of gait in addition to plaintiff's inconsistent use of a cane. (Tr. 22.) As a result, there is no error.

The ALJ also pointed out there are no treatment records regarding plaintiff's physical complaints from 2012 or 2013. (Tr. 21.) Unexplained failure to seek treatment may be considered in making a negative credibility finding. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). It was reasonable for the ALJ to infer that plaintiff's physical problems were not as significant as alleged if she did not seek treatment for them over a significant period of time.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

The ALJ cited a number of clear and convincing reasons supported by substantial evidence which reasonably justify the negative credibility finding. While in some instances there may be evidence which conflicts with the ALJ's conclusions, the findings are based on reasonable interpretations of substantial evidence. When the evidence is subject to more than one rational conclusion, we must defer to the ALJ's conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995.) As a result, the credibility finding is legally sufficient.

## 2.    Opinion Evidence

Plaintiff argues the ALJ erred by rejecting opinion evidence of various physical and mental health providers. In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Similarly, the opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an

impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

> a.    **Debra Dove, MS, LMHC and Treatment Team**

Plaintiff argues the ALJ improperly rejected the opinion of Debra Dove, MS, LMHC, as well as plaintiff's treatment team. (ECF No. 13 at 13-17.) In April 2013, Ms. Dove completed a Mental Residual Functional Capacity Assessment form which included narrative comments. (Tr. 979-82.) She assessed one extreme, three severe, and 12 moderate limitations. (Tr. 980-82.) Ms. Dove listed a number of plaintiff's presentations and symptoms and indicated the treatment team concurs that plaintiff's prognosis is poor for obtaining and maintaining gainful employment. (Tr. 979.) The ALJ assigned little weight to Ms. Dove's opinion. (Tr. 25.) As a mental health counselor, Ms. Dove's opinion is considered an "other source" opinion and can be rejected for germane reasons identified by the ALJ.

However, plaintiff asserts Ms. Dove's opinion is part of the opinion of a "treatment team" chaired by an acceptable medical source, which should be accorded same weight an opinion created by an acceptable medical source under *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). The subsection of the regulation which is part of the basis of the *Gomez* finding regarding nurse practitioners as acceptable medical sources when part of an interdisciplinary team was deleted by amendment in 2000. 65 Fed. Reg. 34950, 34952 (June 1, 2000). Although a question remains open about the vitality of *Gomez* on this issue since the repeal, an argument promoting the interdisciplinary team concept must be supported by evidence indicating the other medical source was working closely with or under the supervision of an acceptable medical source. *Molina v. Astrue*, 674 F.3d 1104, 1112 n.3 (9th Cir. 2012); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). In this case, there is no such evidence. In the narrative, Ms. Dove noted plaintiff's mental health services treatment team including six "other source" credentialed providers and one Ph.D., Dr. Kramer. (Tr. 979.) Ms. Dove identified the "team leader" as Greg Aubol, MS, LMHC, who is not an acceptable medical source. Although Ms. Dove indicated "the treatment team concurs" with the opinion, there is no evidence about the function of the team, no indication that Dr. Kramer worked closely with or supervised Ms. Dove, his

signature does not appear on Ms. Dove's opinion, and his name is mentioned nowhere else in the record.[3] As a result, substantial evidence does not support a finding that Ms. Dove's opinion represents the opinion of an "interdisciplinary team" under *Gomez*, to the extent that concept is still valid, and germane reasons are adequate to reject the opinion.

The ALJ's rejected Ms. Dove's assessment because although plaintiff had seen Ms. Dove for therapy for some time, the ALJ concluded plaintiff's behavior in therapy was at least partly the result of trying to generate evidence in support of her disability claim. (Tr. 25.) The ALJ pointed out that plaintiff brought materials about bipolar disorder to a therapy session and insisted that she had that problem. (Tr. 25, 990.) Plaintiff also insisted that Ms. Dove's findings were the determining factor in her getting approved for SSI. (Tr. 990.) The ALJ concluded plaintiff appeared to be organized, focused and persistent when trying to get Ms. Dove to record details she believed would improve her chances of obtaining disability benefits. (Tr. 25.) This is a reasonable inference from the evidence and is therefore a germane reason for giving less weight to some of Ms. Dove's findings.

The ALJ also pointed out some inconsistencies between Ms. Dove's assessment and other parts of the record. (Tr. 25.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In April 2013, Ms. Dove assessed a moderate ability to remember locations and work-like procedures and a marked limitation in the ability to understand and remember detailed instructions, and noted her "inability to retain information" in the narrative. (Tr. 979-80.) However, the ALJ noted that reports from other providers at the same office in 2012 and 2013 indicate plaintiff's memory is intact. (Tr. 25, 763, 853, 866, 872, 878, 934, 939.) Similarly, the ALJ observed that it would be unlikely that plaintiff would be asked to take care of her friend's children if her behavior in her personal life was similar to her behavior during therapy sessions. (Tr. 25, 961.) This reason is germane to the opinion and is supported by the evidence. As a result, there is no error.

---

[3] In *Gomez*, the evidence reflected the nurse practitioner consulted with a physician numerous times regarding the patient and worked closely under the supervision of the physician. 74 F.3d at 971. There is no similar evidence in this case.

### b.    Dr. Toews and Dr. Kraft

Plaintiff argues the ALJ improperly rejected limitations assessed by Dr. Toews and Dr. Kraft. (ECF No. 13 at 17-19.) Dr. Toews completed a psychological evaluation in December 2011. (Tr. 742-746.) He diagnosed ADD by history; bipolar disorder, unspecified by record; and probable borderline features. (Tr. 746.) Dr. Toews opined plaintiff did not appear to have cognitive or memory deficits and functioned in the average range of intelligence. (Tr. 746.) He opined she is able to comprehend and remember multi-step and detailed instructions and she would be able to perform repetitive, manual tasks. (Tr. 746.) He also indicated she would have difficulty dealing with the general public and difficulty relating to and interacting with coworkers, though she would be able to interact with supervisors. (Tr. 746.) He noted persistence and pace would be poor as a function of motivation. (tr. 746.) He also noted she has little interest in considering the possibility of vocational retraining or assistance in securing employment. (Tr. 746.)

Dr. Kraft is a reviewing psychologist and in December 2011 he assessed moderate limitations in plaintiff's ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruption from psychologically based symptoms; interact appropriately with the public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 114-15.) Dr. Kraft opined that plaintiff's intermittent mood swings, anxiety, poor attention, personality issues and easy distractibility would likely interfere with her ability to sustain concentration, persistence and pace for detailed or complex tasks, but she could manage simple tasks at a productive rate. (Tr. 114.) He also indicated plaintiff's intermittent mood swings, anxiety, poor attention and easy distractibility would likely interfere with her ability to consistently interact appropriately with the general public and coworkers, although she would be capable of superficial social interactions in the work place. (Tr. 115.)

The ALJ assigned some weight to the opinions of Dr. Toews and Dr. Kraft. (Tr. 24.) The ALJ acknowledged plaintiff has some difficulty dealing with the general public and coworkers, but not to the extent that she is precluded from occasional interaction. (Tr. 24.) The ALJ found plaintiff has less social difficulty than Dr. Kraft opined. (Tr. 24.) The ALJ cited evidence in the record that plaintiff reported having friends and observed that plaintiff's "behavior outside of treatment is apparently good enough that she was asked to take care of a friend's children." (Tr. 24, 961.) The ALJ asserted plaintiff's difficulties with mood swings, anxiety, attention and

distractibility are less serious than alleged and would not preclude occasional interaction with the general public and coworkers. (Tr. 24.) For example, despite her claimed difficulties with attention and distractibility, plaintiff reported reading for entertainment. (Tr. 24, 734.) Further, the ALJ pointed out that plaintiff herself denied problems getting along with family, friends, neighbors, or others, and that she gets along well with authority figures for the most part. (Tr. 24, 327-29.) An ALJ may discount a physician's opinion when a claimant's own statements differ from the medical opinion. *See Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 601-602 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ's reasoning for giving some weight to the opinions of Dr. Toews and Dr. Kraft is reasonable and supported by the evidence. As a result, there is no error.

### c.    Mara Fusfield, ARNP

Plaintiff argues the ALJ erred by rejecting the opinion of Mara Fusfield, ARNP. (ECF No. 13 at 19.) Ms. Fusfield saw plaintiff a number of times between March and October 2011. (Tr. 688-700, 714.) Ms Fusfield addressed diagnoses of bipolar disorder, borderline personality disorder, depression, and ADD along with some physical problems not at issue in the disability claim. (Tr. 688-700, 714.) In March 2001, Ms. Fusfield saw plaintiff for a DSHS incapacity exam.[4] (Tr. 714.) Ms. Fusfield noted, "[P]atient does want to go back to work – however with present unstable mood and disorganized thoughts she would need much help and simple tasking." (Tr. 714.) The ALJ assigned little weight to the March 2001 opinion, noting Ms. Fusfield is not an acceptable medical source. (Tr. 24.) The ALJ pointed out that Ms. Fusfield's March 2011 opinion was based on only one visit and she relied on plaintiff's self-report, which the ALJ found less than fully credible. (Tr. 24.) A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Thus, this is a germane reason for rejecting the opinion.

On October 25, 2011, Ms. Fusfield wrote, "For mental health reasons alone, this woman is disabled!" (Tr. 699.) The ALJ assigned no weight to the October 25, 2011 opinion because Ms. Fusfield did not explain the basis for this conclusion and the ultimate determination of disability is an issue reserved to the Commissioner. (Tr. 24.) Some factors relevant to evaluating any medical

---

[4] There is no DSHS evaluation form completed by Ms. Fusfield in the record.

1 opinion include the amount of relevant evidence that supports the opinion, the quality of the
2 explanation provided in the opinion, and the consistency of the medical opinion with the record as
3 a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625,
4 631 (9th Cir. 2007). Further, a medical source opinion that a claimant is "disabled" or "unable to
5 work" is not a medical opinion and does not mean that the ALJ must determine the claimant meets
6 the statutory definition of disability. 20 CFR § 404.1527(d)(1). The determination of disability is
an issue reserved to the Commissioner. S.S.R. 96-5p.

7      Plaintiff cites evidence from Ms. Fusfield's notes of prior visits as an explanation of the
8 basis for the opinion of disability. (ECF No. 13 at 19.) Even if this is adequate as "explanation" of
9 the basis for her opinion, notes from prior visits contain other evidence supporting the ALJ's
10 conclusions. (Tr. 689, 691, 695, 697.) For example, in August 2011 Ms. Fusfield commented that
11 "for a 'scattered person' – she can bring home the idea of what she wants. I found her concentration
12 very good and her personality forceful and demanding." (Tr. 690.) In September 2011, Ms.
13 Fusfield indicated that plaintiff kept trying to manipulate for a different medication contract. (Tr.
14 692.) In October 2011, Ms. Fusfied reported plaintiff complained "bitterly" about not being able
15 to concentrate and that she had been "like this for year," but was unwilling to acknowledge that
16 she was being helped. (Tr. 694.) Further, on the same day Ms. Fusfield wrote "this woman is
17 disabled!" she noted that plaintiff was very worried about making sure everything was recorded in
18 the chart the way she wanted it so she could get disability. (Tr. 698.) These notes conflict with the
19 conclusions plaintiff argues should be drawn from Ms. Fusfield's records and support the ALJ's
20 conclusions elsewhere that plaintiff was exaggerating bad behavior to support her disability claim,
21 seeking medication, and attempting to influence her medical charts to assist with her claim for
22 benefits. To the extent the evidence conflicts, the ALJ reasonably resolved the conflicts based on
substantial evidence. The reasons for rejecting Ms. Fusfield's opinion are germane and supported
by the evidence.

### d.    Dr. Arbabi

23      Dr. Arbabi completed a DSHS Physical Evaluation form on March 17, 2010, six days after
24 plaintiff's auto accident. (Tr. 928-29.) Dr. Arbabi noted multiple fractures, bilateral pulmonary
25 contusions, respiratory failure, acute anemia, bipolar disorder, and substance induced mood
26 disorder. (Tr. 928.) She assessed plaintiff as unable to work and noted limitations of no weight
27 bearing on bilateral lower extremities and a right knee immobilizer. (Tr. 929.) Plaintiff was in the

hospital at the time of the evaluation. (Tr. 929.) The ALJ assigned no weight to the evaluation because it was performed less than a week after plaintiff's motor vehicle accident. (Tr. 22.)

Plaintiff argues Dr. Arbabi's opinion was not properly rejected because no explanation was given. (ECF No. 13 at 21.) The court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ rejected the opinion because of its proximity to the accident. (Tr. 22.) It is reasonable to infer the ALJ concluded the opinion is not representative of plaintiff's enduring physical limitations since the opinion was made while plaintiff was unable to walk and lying in a hospital bed. The evidence reflects all fractures were healed by eight months after the accident and limitations such as no weight bearing on the lower extremities and an immobilized right knee no longer applied. (Tr. 19, 534.) Even if this is not a reasonable inference, Dr. Arbabi's opinion is not "significant probative evidence" that has been overlooked as a basis for remand since the record reflects plaintiff's physical condition improved significantly and Dr. Arbabi's opinion is not representative of plaintiff's continuing physical impairments, if any. There is no error with respect to Dr. Arbabi's opinion.

### e.    Dr. Cate

Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Cate, an examining physician. (ECF No. 13 at 21-23.) Dr. Cate examined plaintiff and completed a DSHS functional assessment form in November 2011. (Tr. 709-11, 930-31.) She assessed generalized muscle weakness, joint pain, bipolar disorder, attention deficit disorder without mention of type and depression. (Tr. 709.) Dr. Cate certified disability for another 12 months. She noted unstable gait and decreased left shoulder and wrist strength. (Tr. 710-11.) On the DSHS form, Dr. Cate opined that plaintiff could lift a maximum of 10 pounds with the right arm and nothing with the left hand and arm. (Tr. 930.) She indicated that plaintiff could use the right arm only. (Tr. 930.) The ALJ assigned little weight to the opinion of Dr. Cate. (Tr. 22.)

The first reason given by the ALJ is that Dr. Cate had only seen plaintiff once or twice at the time the opinion was rendered. (Tr. 22.) This is not an appropriate reason for rejecting the opinion. The opinions of examining physicians and psychologists must be considered by the ALJ. *See* 20 C.F.R. § 404.1527; *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995). The ALJ relied on other opinions of examining and nonexamining sources, so this reasoning is not consistent and is not a reasonable basis for rejecting the opinion. Notwithstanding, the ALJ cited other specific,

legitimate reasons supported by substantial evidence which justify the weight assigned to Dr. Cate's opinion. *See e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).[5]

The ALJ next found that treatment notes do not support Dr. Cate's opinion that plaintiff was unable to lift any weight with the left hand and could only lift 10 pounds with the right hand. (Tr. 22.) A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ pointed out that Dr. Cate's exam findings regarding the right upper extremity were all normal, which is not consistent with her opinion that plaintiff was limited to lifting 10 pounds with the right hand. Plaintiff argues the limitation to 10 pounds lifting could also have been based on other findings related to chronic pain. (ECF No. 13 at 23.) However, there is no evidence tying plaintiff's complaints of chronic pain in her legs (Tr. 709) to weakness in her right upper extremity when on exam all findings related to the right hand and arm were normal. (Tr. 710-11.) The ALJ's conclusion is based on the evidence and this is therefore a specific, legitimate reason for rejecting Dr. Cate's opinion.

The ALJ also rejected Dr. Cate's determination that plaintiff was disabled for an additional 12 months because the ALJ determined plaintiff exaggerated her symptoms at the exam by looking at inconsistencies in the record. (Tr. 22.) An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). For example, Dr. Cate noted unsteady gait on November 16, 2011 which was inconsistent with findings of normal gait at the end of 2010 and on December 1, 2011. (Tr. 22, Tr. 523, 525, 527, 529, 531, 533, 745.) Plaintiff argues that Dr. Cate did not find plaintiff was exaggerating. (ECF No. 13 at 23.) However, in the context of other evidence reflecting a normal gait, it was reasonable for the ALJ to conclude that the inconsistency of Dr. Cate's findings is a result of exaggeration. To the extent there may be conflicting evidence, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). As a

---

[5] The outcome is the same despite the improper reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

result, this is a specific, legitimate reason for rejecting Dr. Cate's findings. Because the ALJ cited specific, legitimate reasons supported by substantial evidence for rejecting Dr. Cate's opinions, there is no error.

### f.    Dr. Pellicer

Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Pellicer, an examining physician. (ECF No. 13 at 24.) Dr. Pellicer examined plaintiff on November 18, 2001. (Tr. 733-38.) She diagnosed chronic pain syndrome status post motor vehicle accident; migraine headaches; and bipolar disorder. (Tr. 737.) She assessed the following limitations: standing and walking for two hours in an eight-hour day with more frequent breaks due to chronic pain syndrome and muscle weakness; sitting six hours in an eight-hour day with more frequent breaks due to chronic pain syndrome; a cane is medically necessary for support and balance; lifting and carrying 10 pounds occasionally due to chronic pain syndrome in upper extremity weakness; bend occasionally but no squatting; and no manipulative limitations. (Tr. 738.) The ALJ rejected the limitations assessed by Dr. Pellicer and found plaintiff exaggerated her pain and debility at the evaluation. (Tr. 22.)

The ALJ pointed out several ways in which Dr. Pellicer's findings are inconsistent with other evidence in the record. (Tr. 22-23.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Dr. Pellicer found plaintiff had right knee flexion of only 95 degrees, but upon examination by Dr. Cate two days earlier, her right knee flexed to 135 degrees. (Tr. 22, 711, 736.) Plaintiff brought a cane to the appointment with Dr. Pellicer and Dr. Pellicer opined a cane was medically necessary for balance. (Tr. 737-38.) However, two days prior she did not bring a cane to the appointment with Dr. Cate (Tr. 710) and less than two weeks later on December 1, her gait and station were normal. (Tr. 745.) Dr. Pellicer limited lifting and carrying to 10 pounds despite normal right upper extremity strength and 4/5 left upper extremity strength in all but one area. (Tr. 737-38.) Where a physician's opinion is itself inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir.1996)

Further, although the ALJ found plaintiff has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, the RFC also limits plaintiff to frequent reaching, handling and fingering with the left upper extremity, despite Dr. Pellicer's conclusion that plaintiff has no manipulative limitations. (Tr. 17-18, 22-23, 738.) Plaintiff argues Dr. Pellicer's

restriction to lifting and carrying 10 pounds was reasonable given her reduced strength and her difficulty ambulating. (ECF No. 13 at 24.) However, the ALJ reasonably considered the inconsistency between Dr. Pellicer's objective findings and the conclusions of Dr. Pellicer's opinion in assigning weight to the opinion and assessing the RFC. The ALJ gave specific, legitimate reasons supported by substantial evidence for rejecting the opinion. As a result, there is no error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED October 28, 2015

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23